UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ZACHARY SMITH,  )  )   Plaintiff,  )  )  v.  )  )  JOSEPH FITZPATRICK, Commissioner of  ) Maine Department of Corrections; and SHAWN  ) D. GILLEN, Chief Deputy and Acting  ) Aroostook County Sheriff,  )  )   Defendants.  ) | Civil No._____ |

## COMPLAINT
### (JURY DEMAND AND INJUNCTIVE RELIEF REQUESTED)

Plaintiff, Zachary Smith, complains against Defendant Dr. Joseph Fitzpatrick, Commissioner of the Maine Department of Corrections ("DOC") and Defendant Shawn D. Gillen, Chief Deputy and Acting Aroostook County Sheriff (collectively, "Defendants") as follows:

### INTRODUCTION

1. This is a civil rights case challenging the denial of adequate medical care by the Aroostook County Sheriff's Department, which is overseen by Chief Deputy Gillen, and the Maine Department of Corrections, which is overseen by Commissioner Fitzpatrick.

2. Mr. Smith suffers from opioid use disorder, which is a chronic brain disease with potentially deadly complications. He has been in recovery for more than five years and wishes to remain in recovery. As a part of his treatment for opioid use disorder, Mr. Smith's physician has prescribed medication-assisted treatment ("MAT"), which is the standard of care for opioid use disorder. Mr. Smith is prescribed a maintenance dosage of buprenorphine tablets, which block

1

the opioid receptors in his brain and thereby suppress drug cravings and opioid withdrawal symptoms.

3. Despite the medical consensus that MAT is the standard of care for opioid use disorder, the Aroostook County Sheriff's Office and Maine Department of Corrections both have policies prohibiting MAT for opioid use disorder, even for individuals like Mr. Smith who are already taking buprenorphine prescribed by their physician.

4. Mr. Smith will become subject to Defendants' policies when he is required to report to prison in a few short weeks. Mr. Smith recently pled guilty to criminal charges in Aroostook County Superior Court, and, as part of the agreed-upon sentence, expects to report to prison after a sentencing hearing on September 6, 2018. Mr. Smith does not know whether he will serve his time at the Aroostook County Jail or at a Maine State facility. Upon information and belief, that decision is in the hands of the Maine Department of Corrections, which is overseen by Commissioner Fitzpatrick.

5. Defendants' policies will force Mr. Smith into acute withdrawal, which is extremely painful and carries a heightened risk for numerous serious medical conditions. Forced withdrawal could also trigger relapse into active addiction, leading to complications such as overdose and death.

6. This denial of necessary medical care violates Mr. Smith's right to be free from discrimination based upon his disability as guaranteed by the Americans with Disabilities Act. Additionally, Defendants' deliberate indifference to the suffering and long-term consequences of forced withdrawal violate Mr. Smith's constitutional right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment to the United States Constitution,

7. Mr. Smith seeks compensatory, declaratory, and injunctive relief to enjoin the Defendants to provide him with necessary medical care and prevent suffering.

## PARTIES

8. Plaintiff, Zachary Smith, is a resident of Caribou, Maine.

9. Defendant Joseph Fitzpatrick, Ph.D., is the Commissioner of the Maine Department of Corrections. In that role, he has "general supervision, management and control of the research and planning, grounds, buildings, property, officers, employees and clients of any correctional facility, detention facility or correctional program." 34-A M.R.S. § 1402(1). Commissioner Fitzpatrick is sued in his official capacity.

10. At all times relevant to this complaint, Commissioner Fitzpatrick was acting under color of state law.

11. Defendant Shawn D. Gillen is the Chief Deputy and Acting Sheriff of the Aroostook County Sheriff's Department. As such, he is the legal custodian of all prisoners housed at Aroostook County Jail and is responsible for the safe, secure, and humane treatment of those prisoners, including medical care. Chief Deputy Gillen is sued in his official capacity.

12. At all times relevant to this complaint, Chief Deputy Gillen was acting under color of state law.

## JURISDICTION

13. This action seeks to vindicate rights guaranteed by the Eighth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983.

14. This action is also brought pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12134.

15. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under federal law. Jurisdiction is also authorized pursuant to 28 U.S.C. § 1343(a)(3).

16. Venue in this Court is proper under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred within this judicial district and because the Defendant is subject to personal jurisdiction in this District.

## STATEMENT OF FACTS

Opioid Use Disorder Is a Serious Disability

17. Opioid use disorder is a chronic brain disease with potentially deadly complications. Signs of opioid use disorder include craving, increasing tolerance to opioids, withdrawal symptoms, and a loss of control.

18. Like other chronic diseases, opioid use disorder often involves cycles of relapse and remission. Without treatment or other recovery, patients with opioid use disorder are frequently unable to control their use of opioids. Opioid use disorder is progressive and can result in disability or premature death.

19. There is an opioid epidemic in Maine, with an average of 1.14 overdose deaths per day reported in 2017. That figure marks an 11 percent increase in opioid overdose deaths over the previous year. As these figures show, opioid use disorder is a serious public health crisis in Maine.

20. Drug addiction is a "disability" under the Americans With Disabilities Act. *See* 42 U.S.C. §§ 12102 and 12131(2); 28 C.F.R. § 35.108 ("The phrase physical or mental impairment includes, but is not limited to . . . drug addiction, and alcoholism.").

21. Although the Americans with Disabilities Act does not apply to current active users of illegal drugs, it does apply to people like Mr. Smith who are participating in a supervised drug rehabilitation program. *See* 42 U.S.C. § 12210(a) & (b); *Thompson v. Davis*, 295 F.3d 890, 896 (9th Cir. 2002); *Collings v. Longview Fiber Co.*, 63 F.3d 828, 831-32 (9th Cir. 1995).

Medication-Assisted Treatment Provides Life-saving Treatment for Opioid Use Disorder

22. Medication-assisted treatment is the standard of care for opioid use disorder. Although some patients can treat their opioid use disorder using other methods, most patients need medication-assisted treatment ("MAT") to achieve long-term recovery.[1]

23. MAT is an opioid treatment that combines medication and counseling. Two medications used in MAT are methadone and buprenorphine. Both have been approved by the United States Food and Drug Administration for treatment of opioid dependence.

24. The results of treatment with MAT are dramatically superior to other treatment options, with studies showing improved retention in treatment, abstinence from illicit drugs, and decreased mortality.

25. The medication element of MAT, including buprenorphine and methadone, helps to prevent the "high" of taking opioids, suppresses withdrawal, and reduces cravings.

---

[1] *Frequently Asked Questions about Opioid Use Disorder and IMAT*, MaineHealth, https://mainehealth.org/-/media/mainehealth/pdfs/opioids/frequently-asked-questions-about-opioid-use-disorder-and-imat.pdf?la=en (last visited July 25, 2018).

26. Methadone is a full agonist at the opioid receptor, and buprenorphine is a partial agonist. In other words, methadone activates the opioid receptor at 100 percent, and buprenorphine activates opioid receptors approximately 20 to 40 percent.

27. Both buprenorphine and methadone bind tightly to the opioid receptor so that someone taking one of these medications is not able to feel a "high" from taking heroin or fentanyl because those drugs are not able to activate the opioid receptor. Both methadone and buprenorphine also facilitate extinction learning, because patients learn that they will not get the same "high" from taking drugs like heroin or fentanyl.

28. Buprenorphine and methadone have been clinically proven to reduce opioid use more than (1) no treatment, (2) outpatient treatment without medication, (3) outpatient treatment with placebo medication, and (4) detoxification only.

29. MAT is far more effective than detoxification alone, which produces very poor outcomes. For example, one study documented the treatment outcomes from a detoxification facility, and showed (1) a 29 percent relapse on the day of discharge, (2) a 60 percent relapse after one month, and (3) a success rate of between only 5 to 10 percent after one year.

30. Forced detoxification is especially dangerous for people with opioid use disorder who are incarcerated. Prisoners with opioid use disorder have a heightened risk for relapse and overdose, with overdose and death especially high in the two-week period immediately following release.

31. Numerous authorities have recognized the serious risks of the opioid crisis and recommended providing MAT in prison to help address those risks.

32. For example, the President's Commission on Combating Drug Addiction and the Opioid Crisis found that "[i]n the weeks following release from jail or prison, individuals with or in recovery from [opioid use disorder] are at elevated risk of overdose and associated fatality."[2]

33. As the commission further recognized, "MAT has been found to be correlated with reduced risk of mortality in the weeks following release and in supporting other positive outcomes." *Id.* "A large study of individuals with [opioid use disorder] released from prison found that individuals receiving MAT were 75% less likely to die of any cause and 85% less likely to die of drug poisoning in the first month after release." *Id.*

34. The American Society of Addiction Medicine, the leading professional society in the country on addiction medicine, also recommends treatment with MAT for people with opioid use disorder in the criminal justice system.[3]

35. The National Commission on Correctional Health Care has also adopted a position statement calling for the "continuation of prescribed medications for substance use disorders," such as buprenorphine and methadone.[4]

36. The United States Department of Justice's Adult Drug Court Discretionary Grant Program has gone even further, requiring grantees to permit the use of MAT.[5]

---

[2] Final Report 72 (2017), available at https://www.whitehouse.gov/sites/whitehouse.gov/files/images/Final_Report_Draft_11-1-2017.pdf.

[3] Kyle Kampman & Margaret Jarvis, American Society of Addiction Medicine (ASAM) National Practice Guideline for the Use of Medications in the Treatment of Addiction Involving Opioid Use, 9 J. Addict. Med. 1, 8 (2015), available at https://www.asam.org/docs/default-source/practice-support/guidelines-and-consensus-docs/asamnational-practice-guideline-jam-article.pdf.

[4] National Commission on Correction Health Care, Substance Use Disorder Treatment for Adults and Adolescents, NCCHC (Oct. 23, 2016), https://www ncchc.org/substance-use-disorder-treatment-for-adults-and-adolescents.

[5] U.S. Dep't of Justice, Adult Court Discretionary Grant Program FY 2018 Competitive Grant Announcement, OMB No. 1121-0329 (2018), available at https://www.bja.gov/funding/DrugCourts18.pdf.

37. As recognized by these authorities, opioid use disorder is a chronic relapsing condition that requires medically appropriate treatment just like other chronic diseases. Once patients start on MAT, they need to be maintained on that treatment under medical supervision to give them the best chances of success.

38. Forced withdrawal is not medically appropriate for patients being treated with MAT. It disrupts their treatment plan, leading to a seven-fold decrease in continuing MAT after release. Death is three times as likely for people out of treatment versus when in treatment.

39. Numerous jails and prisons follow medical and policy authorities and allow prisoners to continue with MAT during incarceration. Examples include Bernalilo County Metropolitan Detention Center (New Mexico); Rikers Island Correctional Facility (New York); Kings County Jail (Washington State); Orange County Jail (Florida).

40. The Rhode Island Department of Corrections makes medication-assisted treatment available to all its prisoners, even those (unlike Mr. Smith) who were not receiving MAT before being admitted to prison.

Mr. Smith's Medical History

41. Zachary Smith suffers from co-occurring disorders, including anxiety, severe depression, and opioid use disorder. With the help of MAT, Mr. Smith has been in recovery for more than five years and is not an active user of illicit narcotics.

42. Mr. Smith is under the care of Dr. David Conner, M.D. a family medicine doctor whose practice includes the treatment of drug addiction.

43. As a part of Mr. Smith's treatment, Dr. Conner has prescribed buprenorphine, which Mr. Smith takes orally, in the form of a sublingual pill. Mr. Smith takes 12 milligrams of buprenorphine per day.

44. Buprenorphine has helped Mr. Smith remain clean and sober for the past five years.

45. If Mr. Smith is abruptly withdrawn from his prescribed buprenorphine, he will enter acute withdrawal, which will create a potentially life-threatening crisis and place him at risk for numerous serious health conditions including suicide and overdose. The dangers of withdrawal are especially acute for Mr. Smith, given his co-occurring diagnoses of anxiety and depression.

46. The physical symptoms of abrupt withdrawal will likely include severe body aches, nausea, shaking, sweating, dizziness, dehydration, and vomiting.

47. The psychological symptoms of withdrawal for Mr. Smith may include decompensation, severe depression, and suicidality.

48. Discontinuation of buprenorphine puts Mr. Smith at a substantially greater risk of relapse of opioid use disorder, which he has managed successfully for more than five years. With a relapse of addiction would come the attendant danger of Mr. Smith becoming unable to control his cravings for opioids, potentially resulting in overdose and death.

Defendants' Policies Place Mr. Smith in Imminent Danger

49. Mr. Smith faces an imminent prison sentence at the Aroostook County Jail or a Maine Department of Corrections facility, where Defendants' policies will force Mr. Smith into dangerous and potentially life-threatening withdrawal.

50. On July 19, 2018, Mr. Smith pled guilty to charges in a criminal case in Aroostook County Superior Court, Docket Nos. ARO-CD-CR-2018-00038. The terms of the plea agreement require 42 months imprisonment, with all but 9 months and 1 day suspended, plus 2 years of probation. Mr. Smith is scheduled for a sentencing hearing on September 6, 2018,

at 11:00 AM, after which, it is his understanding that he must immediately report to Aroostook County Jail to begin serving his sentence of imprisonment.

51. Mr. Smith does not currently know whether he will serve his sentence at the Aroostook County Jail or at a facility in the Maine Department of Corrections. Regardless, both Defendants have policies that prohibit the use of MAT, even for individuals who suffer from opioid use disorder and are already undergoing treatment with MAT at the time of admission to prison or jail.

52. The Aroostook County Jail provides necessary medical care to prisoners in its custody, except for prisoners who suffer from opioid use disorder.

53. The Maine Department of Corrections provides necessary medical care to prisoners in its custody, except for prisoners who suffer from opioid use disorder.

54. Chief Deputy Gillen oversees prisoners at Aroostook County Jail and is responsible for setting policy governing the treatment of prisoners, including their access to medical care.

55. Upon information and belief, it is the policy and custom of the Aroostook County Jail to prohibit prisoners from taking buprenorphine or any other form of MAT.

56. Upon information and belief, it is the policy and custom of the Aroostook County Sheriff's Office to forbid the medical staff and contractors at Aroostook County Jail from administering MAT to prisoners.

57. Mr. Smith has personal experience with Aroostook County Jail's policies. In February 2018, Mr. Smith was detained at Aroostook County Jail for 10 days, during which time he was denied access to buprenorphine and experienced painful and psychologically harmful withdrawal.

58. Defendant Commissioner Fitzpatrick is responsible for prisoners in Maine state custody.

59. Upon information and belief, it is the policy and custom of the Maine Department of Corrections to forbid prisoners from taking buprenorphine or any other form of MAT.

60. Upon information and belief, it is the policy and custom of the Maine Department of Corrections to forbid the medical staff and contractors at Maine State Prison and Maine Correctional Center from administering MAT to prisoners.

61. In 2018, Mr. Smith contacted the Maine Correctional Center, which is overseen the Maine Department of Corrections, to find out whether he would be allowed to continue taking his medication in prison. He was told that the Maine Department of Corrections does not allow prisoners, except for pregnant prisoners, to be treated with buprenorphine or methadone.

62. On July 11, 2018, immediately after learning of Mr. Smith's situation, counsel for Mr. Smith sent a letter to Commissioner Fitzpatrick and Chief Deputy Gillen requesting assurance that Mr. Smith will be provided with buprenorphine or another comparable MAT medication during his time in their custody. The letter requested a response by noon on July 13, 2018, but no response was received. Accordingly, Mr. Smith remains in fear that he will undergo forced withdrawal upon admission to jail or prison on September 6, 2018.

## FIRST CAUSE OF ACTION

**Eighth Amendment: Deliberate Indifference to Serious Medical Need**

63. Plaintiff, Zachary Smith, reasserts and realleges the allegations in paragraphs 1-62.

64. Defendants Chief Deputy Gillen and Commissioner Fitzpatrick, while acting under color of state law, deliberately, purposefully, and knowingly deny Mr. Smith access to necessary medical treatment for his opioid use disorder, which is a serious medical need.

65. Denying Mr. Smith access to his prescribed maintenance dosage of buprenorphine will cause him physical and psychological suffering, will expose him to heightened risk for other serious medical conditions, and could trigger relapse into active addiction, potentially resulting in overdose and death. Defendants' denials also trigger current and ongoing symptoms of Mr. Smith's diagnosed anxiety.

66. As applied to Mr. Smith, the denial of treatment by Defendants Chief Deputy Gillen and Commissioner Fitzpatrick amounts to deliberate indifference to a serious medical need, which is prohibited by the Eighth Amendment's provision on cruel and unusual punishment. *See, e.g.*, *Farmer v. Brennan,* 511 U.S. 825, 832 (1994); *Davis v. Carter*, 452 F.3d 686, 696 (7th Cir., 2006).

## SECOND CAUSE OF ACTION

### Americans with Disabilities Act – Discrimination Against Qualified Individual with Disabilities

67. Plaintiff Zachary Smith reasserts and realleges the allegations in paragraphs 1-62.

68. Aroostook County Jail and the Maine Department of Corrections, overseen by Defendants Chief Deputy Gillen and Commissioner Fitzpatrick, respectively, are "public entities" subject to the Americans with Disabilities Act. *See Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998).

69. Defendants Chief Deputy Gillen and Commissioner Fitzpatrick deny Mr. Smith the benefits of the jail's and prison's medical programs on the basis of Mr. Smith's disability.

70. Defendants Chief Deputy Gillen and Commissioner Fitzpatrick refuse to make a reasonable accommodation for Mr. Smith by providing him with his prescribed maintenance dosage of buprenorphine during his incarceration, thereby discriminating against him on the basis of disability, even though accommodation would in no way alter the nature of the healthcare program. *See Kiman v. New Hampshire Dep't of Corrections*, 451 F.3d 274, 283-84 (1st Cir. 2006).

## PRAYER FOR RELIEF

Wherefore, Zachary Smith, respectfully requests that this Honorable Court:

71. Issue an injunction ordering Defendants to provide Plaintiff with buprenorphine or an equivalent medication during the course of his incarceration;

72. Award Plaintiff monetary damages to fairly compensate him for his injuries, including for the denial of constitutional rights;

73. Award Plaintiff attorney fees and costs;

74. Grant such further relief as the Court may deem just and proper.

PLAINTIFF DEMANDS A JURY TRIAL ON ALL CLAIMS IN HER COMPLAINT SO TRIABLE AS OF RIGHT.

Dated: July 26, 2018

/s/ Emma E. Bond
Emma E. Bond
ACLU of Maine Foundation
121 Middle St., Ste. 200
Portland, Maine 04101
(207) 619-8687
*E-mail: ebond@aclumaine.org*

/s/ Zachary L. Heiden
Zachary L. Heiden
ACLU of Maine Foundation
121 Middle Street, Suite 200
Portland, Maine 04101
(207) 619-6224
*E-mail: zheiden@aclumaine.org*

## CERTIFICATE OF SERVICE

The undersigned certifies that he has electronically filed this date the foregoing

Complaint with the Clerk of the Court using the CM/ECF system and by mailing a copy of the

Complaint via Certified Mail, postage prepaid to counsel for Defendant at:

Commissioner Dr. Joseph Fitzpatrick
Department of Corrections,
State House Station 111
Augusta, Maine 04333

Chief Deputy Sheriff Shawn Gillen
Aroostook County Sheriff's Department
25 School Street
Houlton, Maine 04730

Dated: July 26, 2018                    /s/ Emma E. Bond
                                        Emma E. Bond
                                        ACLU of Maine Foundation
                                        121 Middle St., Ste. 200
                                        Portland, Maine 04101
                                        (207) 619-8687
                                        *E-mail: ebond@aclumaine.org*