UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ZACHARY SMITH, <br><br> Plaintiff, <br><br> v. <br><br> JOSEPH FITZPATRICK, Commissioner of Maine Department of Corrections; and SHAWN D. GILLEN, Chief Deputy and Acting Aroostook County Sheriff, <br><br> Defendants. | ) ) ) ) ) ) ) Civil No. 18-cv-00288-NT ) ) ) ) ) ) ) ) |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff, Zachary Smith, files this reply in support of his motion for a preliminary injunction ordering Defendants, Commissioner Joseph Fitzpatrick and Chief Deputy Shawn D. Gillen, to cease withholding necessary medication-assisted treatment (MAT) for his opioid use disorder (OUD) and otherwise discriminating against him on the basis of his disability.

Defendants' opposition filings make three primary arguments, each of which is incorrect. *First*, Defendant Gillen argues that the case is not yet ripe because it remains undecided where Mr. Smith will serve his sentence. Gillen Br. at 4-6. But an existing state court order settles that question, making this dispute ripe and ready for adjudication. *Second*, Defendants argue that they already provide adequate treatment for opioid use disorder through withdrawal protocols, counseling, and reentry procedures. Gillen Br. at 8-9; Fitzpatrick Br. at 7-8. Yet none of Defendants' protocols are clinically effective treatment for the potentially deadly consequences of opioid use disorder. *Finally*, Defendants argue that security concerns like drug trafficking and diversion support their refusal to provide MAT. Gillen Br. at 8-9; Fitzpatrick Br. at 8-9. Concerns regarding diversion, however, can be effectively managed through appropriate

1

implementation of a MAT program, and treating prisoners' underlying opioid use disorder may actually ameliorate the causes of drug trafficking. Moreover, the presence of illicit drugs in prison confirms that withholding MAT could be dangerous and potentially deadly for Mr. Smith.

## DISCUSSION

### I. The Motion Is Ripe for the Court's Review

Defendant Gillen argues that the case is not ripe because there remains "uncertainty" as to Mr. Smith's sentence and where he will serve it. Gillen Br. at 5. But this dispute is far from the sort of "abstract disagreements over administrative policies" that courts have dismissed as unripe. *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). Based on orders from the state court in his criminal case, Mr. Smith will be sentenced to nine months and one day in the custody of the Maine Department of Corrections (DOC), where it is undisputed that he will be deprived of MAT. Order, ECF No. 11-1 (Aug. 2, 2018). And he must first report to the Aroostook County Jail, which likewise prohibits MAT, pending transport to Maine DOC. Accordingly, Mr. Smith is at imminent risk of forced withdrawal by one or both Defendants, and thus has stated a claim that is fit for adjudication.

### II. Mr. Smith Is Likely To Succeed On the Merits

Contrary to Defendants' arguments, Mr. Smith is likely to prevail on his claims that Defendants' MAT policies violate the Eighth Amendment and Americans with Disabilities Act (ADA). Under the first factor of both claims, Defendants appear to concede that opioid use disorder is a serious medical condition for purposes of the Eighth Amendment, and that Mr. Smith is a qualified individual with a disability under the ADA. *See* Gillen Br. at 8-9 (not disputing these elements); Fitzpatrick Br. at 7-8 (same). Instead, they contend that offering *some*

treatment—namely, withdrawal treatment and, in some cases, counseling—insulates them against charges of deliberate indifference under the Eighth Amendment or discrimination under the ADA. Gillen Br. at 8-9; Fitzpatrick Br. at 7-8. Forced withdrawal, however, is not supported by the evidence or scientific literature as an appropriate treatment for opioid use disorder, and instead can cause relapse into active addiction, resulting in overdose and death. MacDonald Decl. ¶ 25. That remains true even when forced withdrawal is accompanied by counseling or therapy. *Id.* ¶¶ 6, 28-29.

In short, Defendants fail to show that their treatments are effective for opioid use disorder. Instead, their prohibitions against MAT arise from "safety and security concerns," not from any assessment that alternative treatments are comparable or preferable to MAT. *See, e.g.*, Gillen Br. at 8; Fitzpatrick Br. at 8-9; Clinton Decl. at ¶ 4, ECF No. 24-1 (stating that Maine DOC withholds MAT "[d]ue primarily to security concerns caused by drug diversion and trafficking in its facilities").

Defendants are also incorrect that security concerns like diversion and drug trafficking justify their failure to provide effective treatment for opioid use disorder. *See, e.g.*, Fitzpatrick Br. at 9 (citing *Kosilek v. Spencer*, 774 F.3d 63, 83 (1st Cir. 2014). Although diversion can occur, "it is absolutely manageable and is not so frequent to provide a reason for refusing to provide MAT." MacDonald Decl. ¶ 36.  "Diversion does not undermine the effective implementation of MAT programs in the locations where it has been tried." *Id.* The Maine DOC already has policies addressing controlled substances that provide several methods for limiting diversion. DOC Policy 18.07(VI). Other methods that are effective against diverting MAT include: (1) administering medication by nurses, who are trained to perform an oral check after administration to ensure the medication has dissolved; (2) having patients sit at desk with their

3

hands on the desk while the medication dissolves under the tongue; (3) using a crushed formulation of generic buprenorphine, or liquid buprenorphine that is poured under the tongue, which have little chance to be diverted; (4) using the combination of nursing staff and a correctional officer to administer medication; and (5) using a formulation of rapidly dissolving tablets that dissolve quickly in the mouth and make it hard for medication to be diverted. MacDonald Decl. ¶¶ 37-38.

The Defendants also assume that providing buprenorphine or methadone would worsen an existing drug trafficking problem, *see, e.g.*, Fitzpatrick Br. at 11, but fail to support that assumption. *See* MacDonald Decl. ¶ 42. To the contrary, treating opioid use disorder would actually reduce cravings for illicit drugs, and, thus, may reduce drug trafficking. *Id.*

Far from providing a reason against providing MAT, the drug trafficking problem makes it even *more dangerous* to withhold necessary treatment in prison. *Id.* ¶ 43. The data from Maine DOC shows that inmates regularly test positive for illicit substances, despite the fact that they are prohibited in the institution. *See* Drug Screening Summary, ECF No. 24-3 (showing positive drug tests for substances including ecstasy, amphetamines, and opiates). Accordingly, withholding effective treatment for opioid use disorder carries the dangerous and deadly complications of potential overdose and death—both during and after incarceration. Given the well-publicized opioid crisis, Defendants know of this harm and their ongoing refusal to provide appropriate care is deliberately indifferent.

Finally, with regard to the ADA, Defendant Fitzpatrick argues for the limited application of the ADA adopted in *United States v. Georgia*, 546 U.S. 151 (2006), in which the Supreme Court limited an ADA damages claim based upon Eleventh Amendment immunity concerns. Fitzpatrick Br. at 7. Unlike *Georgia*, however, this motion for preliminary injunction seeks only

injunctive relief, not damages against the state, making the Eleventh Amendment immunity issue inapposite. *See Georgia*, 546 U.S. at 160 (Stevens, J., concurring) (noting that the parties did not dispute that the ADA "is constitutional insofar as it authorizes prospective injunctive relief against the State") (citation omitted).

**III.     The Remaining Preliminary Injunction Factors Also Favor Mr. Smith**

With regard to the remaining three preliminary injunction factors—irreparable harm, balance of harms, and public interest—Defendants contend that **(1)** any harm to Mr. Smith is not "irreparable" because withdrawal and relapse are easily managed, Gillen Br. at 10; Fitzpatrick Br. at 9-10; **(2)** the harms of introducing MAT outweigh the "relatively minor effect that opioid withdrawal may have on one plaintiff," Fitzpatrick Br. at 11; and **(3)** the public interest supports deference to prison officials, *id.* at 11; Gillen Br. at 11.

These arguments fail to situate Mr. Smith's case in the context of the nationwide opioid epidemic. Maine is particularly hard hit, with hundreds of opioid overdose deaths just last year. MacDonald Decl. ¶ 7. Failure to treat Mr. Smith's disease could render him another statistic in this deadly toll. The very real risk of overdose and death means that the harm to Mr. Smith of withholding treatment is certainly "irreparable."

Defendants further argue that Mr. Smith faces no irreparable harm because he did not exhibit withdrawal symptoms during a 10-day detention at Aroostook County Jail earlier this year. *See, e.g.*, Fitzpatrick Br. at 9. As previously described by Mr. Smith, however, he did suffer serious withdrawal symptoms during that 10-day period. Smith Decl. ¶¶ 32-34, ECF No. 3-2. Although Nurse Willettee, a nurse at Aroostook County Jail, believes otherwise, she spent only a few moments with Mr. Smith over the course of his 10 days of detention and did not review his symptoms under the COWS protocol as required by Aroostook County Jail policy. Supp. Smith

Decl. ¶ 3. Mr. Smith is in a better position to evaluate the severity of his own withdrawal symptoms. *Id.* ¶¶ 3, 6-7.

Additionally, "[e]ven if the patient is not actively vomiting or otherwise exhibiting obvious symptoms, he or she could still be in serious pain from withdrawal and experiencing other damaging psychological symptoms." MacDonald Decl. ¶ 10. "These symptoms are exacerbated by co-occurring disorders such as depression, anxiety and post-traumatic stress disorder (PTSD), which are common among patients with OUD." *Id.* Mr. Smith suffers from numerous co-occurring disorders, including depression, anxiety, and PTSD, and thus would likely suffer from a complex and dangerous withdrawal. *See, e.g.*, Conner Decl. ¶¶ 7-9.

Defendant Gillen further contends, without citation, that "[t]here are no known long-term effects of withdrawal if the withdrawal symptoms are managed according to medically-accepted protocols." Gillen Br. at 3-4. This is untrue and reflects a lack of understanding about opioid use disorder. To the contrary, "after withdrawal, patients with OUD do not return to their pre-OUD baseline, often experiencing symptoms of OUD such as cravings, which can continue indefinitely." MacDonald Decl. ¶ 11. Not only that, but patients may be unable to return to treatment, leading to long-term relapse into active addiction. *See id.* ¶¶ 27-29.

Nor is the irreparable harm lessened by the reentry programs that Defendant Fitzpatrick claims are available in Maine DOC. *See* Fitzpatrick Br. at 10. Such programs do not erase the risk of relapse and overdose upon release for prisoners who were withdrawn from MAT during incarceration. MacDonald Decl. ¶ 27. "Referral to a medication-assisted treatment program *after* incarceration does not substitute for appropriate treatment during incarceration." *Id.*

With regard to the balance of the harms, the risk of diversion has been successfully managed in many correctional facilities that now use MAT. MacDonald Decl. ¶ 32. By contrast,

we cannot afford more overdoses and deaths from failure to treat opioids use disorder. Mr. Smith has already lost his sister to an opioid overdose and should not be forced to risk his own life as well. *See* Smith Decl. ¶ 15, ECF No. 3-2. Finally, the public interest strongly favors tackling the opioid crisis—even, as in this case, one patient at a time.

## CONCLUSION

For these reasons, Mr. Smith respectfully requests that the Court issue a preliminary injunction ordering Defendants to provide medication-assisted treatment, whether with buprenorphine or an equivalent medication, during his time in their respective custody.

Respectfully submitted,

Dated:  August 31, 2018

/s/ Zachary L. Heiden
Zachary L. Heiden
American Civil Liberties Union of Maine Foundation
121 Middle Street, Suite 200
Portland, ME 04103
(207) 619-6224
*heiden@aclumaine.org*

/s/ Emma E. Bond
Emma E. Bond
American Civil Liberties Union of Maine Foundation
121 Middle Street, Suite 200
Portland, ME 04103
(207) 619-8687
*ebond@aclumaine.org*

Counsel for Plaintiff, Zachary Smith

**CERTIFICATE OF SERVICE**

The undersigned certifies that he has electronically filed this date the foregoing Plaintiff's Reply in Support of Motion for Preliminary Injunction with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record. This filing is available for viewing and downloading from the ECF system.

Dated:  August 31, 2018                /s/ Emma E. Bond
                                       Emma E. Bond
                                       American Civil Liberties Union of Maine
                                       Foundation
                                       121 Middle Street, Suite 200
                                       Portland, ME 04103
                                       (207) 619-8687
                                       *ebond@aclumaine.org*

                                       Counsel for Plaintiff Zachary Smith