UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ZACHARY SMITH, | ) |
|     Plaintiff | ) ) ) ) Civil Action No. 1:18-cv-00288-NT |
| v. | ) ) |
| JOSEPH FITZPATRICK, et al. | ) ) |
|     Defendants | ) |

**<u>MOTION OF AMERICAN CIVIL LIBERTIES UNION OF MAINE FOUNDATION AND NATIONAL PRISON PROJECT OF THE AMERICAN CIVIL LIBERTIES UNION FOUNDATION FOR AWARD OF ATTORNEY'S FEES AND LITIGATION EXPENSES</u>**

Pursuant to 42 U.S.C. §1988 and §12133, Local Rule 54.2, and this Court's Order dated October 1, 2018, the American Civil Liberties Union of Maine Foundation ("ACLU of Maine") and National Prison Project of the American Civil Liberties Union Foundation ("NPP") move the Court for an award of reasonable attorney's fees and litigation expenses from Defendant Dr. Joseph Fitzpatrick, Commissioner of the Maine Department of Corrections.

This case—a pre-commitment challenge to the availability of Medication-Assisted Treatment for a prospective prisoner suffering from opioid use disorder—was one of the first of its kind in Maine and one of the most successful cases of its kind in the nation. Following months of preparation, and on the eve of a hearing on the merits of Plaintiff's petition for preliminary injunctive relief, the Defendant reversed course and agreed to provide Plaintiff with all the relief he had sought, and agreed as well to continuing jurisdiction by this Court to enforce the terms of the consent agreement. The Court incorporated the agreement into its order of

–1–

dismissal, thus creating a "material alteration of the legal relationship of the parties." *See Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Res.*, 521 U.S. 598 (2001). In light of this, Plaintiff is the prevailing party in this litigation, and he is therefore entitled to his reasonable attorney's fees and costs.[1]

**A. During ACLU of Maine and NPP's representation, the Plaintiff was clearly a prevailing party and thus ACLU of Maine and NPP are entitled to reasonable attorney's fees and litigation expenses.**

Plaintiff Zachary Smith prevailed on his claim for Medication-Assisted Treatment ("MAT") to treat his opioid use disorder during his term of incarceration in the custody of the Maine Department of Corrections. *See* Order, ECF No. 36 (Oct. 1, 2018); Settlement Agreement, ECF No. 30 (Sept. 28, 2018). Plaintiff is not seeking monetary damages (due to his case succeeding before he reported to prison), so access to MAT in prison represents total and complete vindication of the relief sought in this case. Both the Civil Rights Attorney's Fees Act and the Americans With Disabilities Act expressly provides that a prevailing party may receive reasonable attorney's fee, including litigation expenses, and costs. *See* 42 U.S.C. §1988 and § 12205.

A "prevailing party" is one who achieves a material alteration in the relationship of the parties, through the litigation, which is enforceable by the court. *See Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001). That

---

[1] Prior to filing this Motion, in the interest of conserving Court resources, Plaintiff made an unsuccessful effort to settle the issue of attorney fees and costs. Plaintiff reserves the right to seek additional attorney fees for the time expended to establish his entitlement to an award of attorney fees and costs. *See Lund v. Affleck,* 587 F.2d 75, 77 (1st Cir. 1978) ("It would be inconsistent with the purpose of the Fees Act to dilute a fees award by refusing to compensate the attorney for the time reasonably spent in establishing and negotiating his rightful claim to the fee").

material alteration can come about by an enforceable judgment on the merits or, as here, an enforceable court order that has "received judicial imprimatur." *See id.; Maher v. Gagne,* 448 U.S. 124, 129 (1980) ("The fact that respondent prevailed through settlement rather than through litigation does not weaken her claim to fees"); *Hutchinson ex rel. Julien v. Patrick,* 636 F.3d 1, 9 (1st Cir. 2011*)* (holding that "prevailing party status" may be achieved through "a court-approved settlement that is not embodied in a formal consent decree").

Plaintiffs achieved a material alteration in the relationship of the parties through this litigation. Plaintiff made a pre-litigation demand for access to MAT during his prison sentence, which was refused. Declaration of Zachary Heiden ("Heiden Decl."), ¶ 3. Plaintiff then filed suit and sought an emergency injunction requiring that he be provided with MAT during his prison sentence, which was opposed. *Response of Defendant Joseph Fitzpatrick to Plaintiff's Motion for Preliminary Injunction* (ECF No. 24), 1. In opposing Plaintiff's request for relief, Defendant stated, "The Department has made a deliberate policy decision not to provide medically assisted treatment with methadone or Suboxone to prisoners with opiate addiction in its facilities. This decision is in part based on considerations of security and the safety of prisoners and staff." *Id.* at 4.

Defendant has consistently maintained and enforced this policy of denying access to MAT against a large and growing number of prisoners who suffer from opioid use disorder. But, through the diligent and efficient advocacy of Plaintiff's counsel, the Defendant repudiated his own deliberate policy and agreed to provide MAT to Plaintiff during his nine months and 1 day sentence. The settlement agreement in this case requires that "Commissioner Fitzpatrick or his

material alteration can come about by an enforceable judgment on the merits or, as here, an enforceable court order that has "received judicial imprimatur." *See id.; Maher v. Gagne,* 448 U.S. 124, 129 (1980) ("The fact that respondent prevailed through settlement rather than through litigation does not weaken her claim to fees"); *Hutchinson ex rel. Julien v. Patrick,* 636 F.3d 1, 9 (1st Cir. 2011*)* (holding that "prevailing party status" may be achieved through "a court-approved settlement that is not embodied in a formal consent decree").

Plaintiffs achieved a material alteration in the relationship of the parties through this litigation. Plaintiff made a pre-litigation demand for access to MAT during his prison sentence, which was refused. Declaration of Zachary Heiden ("Heiden Decl."), ¶ 3. Plaintiff then filed suit and sought an emergency injunction requiring that he be provided with MAT during his prison sentence, which was opposed. *Response of Defendant Joseph Fitzpatrick to Plaintiff's Motion for Preliminary Injunction* (ECF No. 24), 1. In opposing Plaintiff's request for relief, Defendant stated, "The Department has made a deliberate policy decision not to provide medically assisted treatment with methadone or Suboxone to prisoners with opiate addiction in its facilities. This decision is in part based on considerations of security and the safety of prisoners and staff." *Id.* at 4.

Defendant has consistently maintained and enforced this policy of denying access to MAT against a large and growing number of prisoners who suffer from opioid use disorder. But, through the diligent and efficient advocacy of Plaintiff's counsel, the Defendant repudiated his own deliberate policy and agreed to provide MAT to Plaintiff during his nine months and 1 day sentence. The settlement agreement in this case requires that "Commissioner Fitzpatrick or his

designee shall order, dispense, and administer to Plaintiff buprenorphine or an equivalent medication throughout the course of his nine-month and-one-day sentence of incarceration in the Maine Department of Corrections." *Settlement Agreement* ¶1 (ECF No. 30), 2. This is precisely the relief sought by the Plaintiff in his Complaint and motion for preliminary injunctive relief. *See Complaint* ¶71 ("Prayer for Relief") (ECF No. 1), 13 (Praying for relief in the form of "an injunction ordering Defendants to provide Plaintiff with buprenorphine or an equivalent medication during the course of his incarceration").

Plaintiff also satisfies the second requirement for qualifying as a prevailing party: that the change in circumstances receive a "judicial imprimatur." In the First Circuit, there are three factors that govern this second requirement: 1) the change in the legal relationship needs to be court-ordered; 2) there needs to be judicial approval of the relief in relation to the merits of the case; and 3) there needs to be judicial oversight to enforce the terms of the order. *Hutchinson v. Patrick*, 636 F.3d 1, 9 (1st Cir. 2011). Plaintiff satisfies all three of these factors—indeed, each of these factors were necessary to Plaintiff's agreement to settle his case.

***First***, the change in the legal relationship of the parties was and is court-ordered. The parties jointly moved that the Court dismiss Plaintiff's action "upon the condition that the Court incorporate the agreement into the order of dismissal and retain jurisdiction to enforce the agreement." *Notice of Settlement and Joint Motion to Incorporate Terms of Settlement Into Order of Dismissal* (ECF No. 29), 1. The settlement was conditioned on judicial approval, which "gives bite" to the reciprocal obligations of the parties. *See Hutchinson*, 636 F.3d at 9. As in *Hutchison*, the approval of the Court was required for the settlement to take place. *See id.*

***Second***, there was judicial approval of the relief in relation to the merits of the case. The Settlement Agreement goes directly to the merits of the case, and grants the relief on the merits requested in the Plaintiff's complaint. *See supra* pp. 3-4. Indeed, Defendant Fitzpatrick offered the Plaintiff complete relief. Aside from fees, the Plaintiff would not have requested any further relief even had the case gone to trial. By incorporating this Settlement Agreement into a Court order, moreover, the Court provided its judicial "approval" or "imprimatur." *See Buckhannon*, 532 U.S. at 605. Nothing more is required. This prong's reference to "judicial approval" merely refers to the analysis in *Buckhannon* that "a 'judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order.'" *Aronov v. Napolitano*, 562 F.3d 84, 90 (1st Cir. 2009) (en banc) (citing *Buckhannon*, 532 U.S. 598; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994)). In this case, the Court has gone farther than "mere awareness and approval of the terms of the settlement agreement," and has instead directly incorporated those terms into a Court order with force of law. *See* Order (ECF No. 36).

***Third***, there is continuing jurisdiction to enforce the terms of the Court's order in this case. By incorporating the Settlement Agreement into an order of dismissal, the Court retained contempt jurisdiction to enforce its terms. *See Buckhannon*, 532 U.S. at 604 n.7 (citing *Kokkonen*, 511 U.S. 375 (1994)). "[F]ederal jurisdiction to enforce a private contractual settlement will often be lacking *unless* the terms of the agreement are incorporated into the order of dismissal." *Id.* (emphasis added). Here, the terms of the agreement have been incorporated into a Court order, thus triggering the Court's contempt jurisdiction to enforce that order. *See id.*

Furthermore, the incorporated Settlement Agreement itself provides that Plaintiff may bring an emergency motion to enforce compliance with the settlement (Settlement Agreement ¶7 (ECF No. 30), 3) and that the parties "may request the Court intervene to resolve" a dispute about the availability of MAT in the event that Plaintiffs term of incarceration is lengthened (Settlement Agreement ¶8 (ECF No. 30), 4.

This continuing jurisdiction distinguishes a settlement of the kind that marks the Plaintiff as a "prevailing party" from a simple agreement by the parties to follow a particular course of conduct or pay some measure of compensation. The former is enforceable in the original action, while the latter necessitates the filing of a new action for breach of contract.

One way to articulate this difference is to fall back on the typical distinction between "consent decrees," which create prevailing party status, and purely private agreements, which do not. *See Buckhannon*, 532 U.S. at 604. As the First Circuit explained in *Hutchison*, the proper inquiry focuses on the substance of the order, not the form. *See Hutchinson*, 636 F.3d at 9. It is not necessary that the order be labeled "Consent Decree," or that it "contain elements inherent in a conventional consent decree" in order to bear the markings of a judicial imprimatur, as that would be "too crabbed a reading" of the relevant legal principles. *See id.* Rather, the substantive difference is that purely private agreements are not generally enforceable by a district court as an order of the court, whereas a consent decree (or its equivalent) is. *Buckhannon*, 532 U.S. at 604 n.7 (citing *Kokkonen*, 511 U.S. at 381).

What makes a settlement into a consent decree (or equivalent) is having the obligation to comply with its terms made part of the order of dismissal—"either by separate provision

'retaining jurisdiction' over the settlement agreement, or by incorporating the terms of the settlement agreement in the order of dismissal." *See Smyth v. Rivero*, 282 F.3d 268, 280–81 (4th Cir. 2002); *Kokkonen*, 511 U.S. at 381 (1994). That standard is plainly satisfied here, where the Court has incorporated the parties' Settlement Agreement into its order of dismissal. Looking to the substance of the order rather than the form (as the First Circuit has directed) reveals that the Court's continuing jurisdiction completes the requirement for Plaintiff to qualify as the prevailing party.

Because Plaintiff achieved complete success through this litigation, and because the terms of that success are enforceable by the Court, he is a "prevailing party" under both §1988 and §12133, and he is entitled to an award of attorney fees.

**B. The Plaintiff was not only a "prevailing party," but the success in his case was exceptional.**

The result achieved by Plaintiff in this case is exceptional, both because it is the first successful case of its kind in Maine (and one of the first in the country) but also because of the significant social problem that his success will help address. The case was the subject of a great deal of attention, due to Maine's opioid crisis and the growing concern that addiction needs to be addressed as a medical problem and not merely a social one. *See, e.g.*, Erin Rohda, "ACLU lawsuit demands Maine man get addiction treatment in jail," BANGOR DAILY NEWS (July 26, 2018) (https://bangordailynews.com/2018/07/26/mainefocus/aclu-lawsuit-demands-maine-man-get-addiction-treatment-in-jail/) (last viewed October 28, 2018); Susan Sharon, "ACLU Says Maine Prisoners Should Have Access To Medication Assisted Treatment," MAINE PUBLIC (July 26, 2018) (http://www.mainepublic.org/post/aclu-says-maine-prisoners-should-have-access-

medication-assisted-treatment#stream/0) (last viewed October 28, 2018); Editorial Board, "Our View: Drug Treatment Should Continue Behind Bars," PORTLAND PRESS HERALD (July 29, 2018) (https://www.pressherald.com/2018/07/29/our-view-drug-treatment-should-continue-behind-bars/) (last viewed October 28, 2018).

The result in this case was widely praised. *See, e.g.*, Editorial Board, "Our View: In-prison drug treatment deal could save lives," PORTLAND PRESS HERALD (October 2, 2018) (https://www.pressherald.com/2018/10/02/our-view-in-prison-drug-treatment-deal-could-save-lives/) (last viewed October 28, 2018); Raven Rakia, "Prisons Crack Down On An Opioid Treatment Drug, Endangering Lives, THE APPEAL (https://theappeal.org/prisons-crack-down-on-an-opioid-treatment-drug-endangering-lives/) (last viewed October 28, 2018) (reporting that, but for the success in this case, Plaintiff "could have been one of the casualties" of forced sudden withdrawal). Though the order in this case does not apply to any prisoners other than Plaintiff, or any prison officials other than Defendant, the result in this case will make it more difficult for corrections officials in Maine, or across the country, to claim that it is impossible to safely administer MAT in the prison setting.

The result achieved by Plaintiff in this case did not happen by itself; it took hours of diligent and efficient legal advocacy on the part of Plaintiff's counsel. Many of those hours were spent working with expert witnesses who were capable of convincing the Court of the need for medication-assisted treatment and the appropriateness of providing medication-assisted treatment in the corrections context. Because of the Department of Corrections' "deliberate policy decision" to exclude MAT from Maine correctional facilities, there are very few medical

practitioners in Maine who have experience with medication-assisted treatment in the corrections setting, and no corrections professionals in Maine had sufficient experience supervising MAT in the corrections setting to be qualified to offer expert testimony. In addition, corrections professionals in Maine were understandably reluctant to offer testimony contradicting the security-related arguments of Defendant, who is the highest ranking corrections official in the state.

It was, therefore, necessary for Plaintiff's counsel to seek out and retain medical and security experts from outside of Maine, to educate them about the particularities of the medical and security system in Maine, and to obtain their opinions on matters that would be useful to the Court in rendering a decision on this case. In this, Plaintiff's out-of-state counsel from NPP were indispensable, because of their decades of experience litigating cases concerning access to medical care in prison, as well as Mr. Eber's specialized training and certification in public health and corrections health. *See* Fathi Decl., Ex. C.

### C. A fully-compensatory fee based on market hourly rates should be awarded.

It is well-settled that in civil rights cases, a "reasonable" fee is to be a "fully compensatory fee," *Hensley v. Eckerhart*, 461 U.S. 425, 435 (1983), and is to be "calculated on the basis of rates and practices prevailing in the relevant market," *Missouri v. Jenkins*, 491 U.S. 274, 286 (1989). "However, an out-of-town specialist may be able to command a somewhat higher price for his talents, both because of his specialty and because he is likely to be from a larger city, where rates are higher." *Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir. 1983).

In this case, Plaintiff was represented by Maine attorneys (whose rates are consistent with approved Maine rates) as well as NPP attorneys based in Washington, D.C., who are extremely specialized and who, commensurate with that specialization and the demands for their time, command a higher rate.

The proper method for calculating statutory attorney's fees is the "lodestar" method by which the number of hours reasonably expended in the litigation is multiplied by the prevailing market hourly rate for the services performed. *See Hensley*, 461 U.S. at 433; *Blum v. Stenson*, 465 U.S. 886, 894-896 (1984); *Wilcox v. Stratton Lumber, Inc.*, 921 F.Supp. 837, 845 (D. Me. 1996) (citing *Lipsett v. Blanco*, 975 F.2d 934, 937 (1st Cir. 1982)). The First Circuit has directed district courts to utilize the lodestar method, cautioning that deviations are permissible only "in highly unusual situations." *Coutin v. Young & Rubercam Puerto Rico, Inc.*, 124 F.3d 331, 337 (1st Cir. 1997). This method requires the Court to determine both the number of hours reasonably spent on the case by Plaintiff's counsel and the reasonable hourly rate for counsel based on the private marketplace.

Plaintiff has included time spent drafting a pre-filing demand letter. Discrete pre-suit work that is useful and of a type ordinarily necessary to advance the litigation is compensable. *See Schneider v. Colegio de Abogados de P.R.*, 187 F.3d 30, 33 (1st Cir.1999) (*quoting Webb v. Bd. of Educ. of Dyer Cnty., Tenn.*, 471 U.S. 234, 243 (1985)); *see also Bogan v. City of Boston*, 489 F.3d 417, 427 (1st Cir.2007). Here, the filing of a demand letter was not only useful, in that it put the Defendant on notice of the impending emergency motion, but it was also the kind of litigation practice that the Court ought to encourage. Had the Defendant agreed to the terms of

Plaintiff's demand letter immediately, rather than waiting until the eve of trial, a great deal of time and expense could have been avoided. But, Plaintiff has, in the exercise of billing judgment, excluded a great deal of time spent in prosecuting this case, including time spent by counsel communicating with one another and communicating with prospective expert witnesses who were not ultimately retained. Both the hours spent, and the rates sought, are reasonable.

**D. Overview of litigation.**

**1. The case presented numerous novel, complex, and difficult issues in prisoner's rights law.**

This case presented many very complicated and novel issues of law and fact. While it has long been settled that prisons and jails must provide adequate medical care to prisoners in their custody, the exact contours of that right cannot be precisely fixed. What is fixed, however, is that Plaintiffs like Mr. Smith may not succeed on claims under the Eighth Amendment or the Americans with Disabilities Act by proving mere negligence. Instead, Mr. Smith needed to prove that Defendant's policy amounted to deliberate indifference *See Farmer v. Brennan*, 511 U.S. 825, 828, (1994). This heightened standard imposed a congruent heightened challenge for Plaintiff's counsel—to not only prove that the prison's policy was wrong, but that the prison officials could not help but know it was wrong and yet failed to improve it. Plaintiff's counsel were able to overcome this burden only through extensive research, the retention of and consultation with nationally recognized experts, and careful planning, all of which took an enormous amount of time. *See, e.g., Plaintiff's Reply in Support Motion for Preliminary Injunction* (ECF No.25) (containing the Declaration of Dr. Ross Macdonald and associated exhibits); *Plaintiff's Motion to Supplement Brief with Declaration of Edmond Hayes, Assistant*

*Superintendent of Franklin County Jail* (ECF No. 27) (containing the Declaration of Assistant Superintendent Hayes and associated exhibits).

**2. At every turn, Plaintiff's counsel sought to vindicate their client's rights in the most efficient manner.**

Plaintiff's counsel gave Defendant Fitzpatrick numerous opportunities to resolve this case before the expenditure of substantial time and effort in drafting pleadings, motions, declarations, expert affidavits, and engaging in other time-consuming litigation. For example, in July, before the complaint was served, counsel for the Plaintiff wrote to the Defendant seeking to resolve any dispute without the necessity of filing litigation. The terms of that proposed resolution were essentially identical to the terms on which the case was ultimately settled. Heiden Decl. ¶¶ 3, 5.

Defendant did not respond, so Plaintiff filed suit and sought an emergency order. Again, Plaintiff stated, at the first Conference of Counsel on July 30, that the case could be resolved if the prison agreed to provide Plaintiff with MAT during his incarceration. Again, Defendant refused. Instead, Defendant filed an Opposition to Plaintiff's motion and commenced the process of discovery and preparation for hearing. Heiden Decl. ¶ 4; Declaration of Emma Bond ("Bond Decl.") ¶ 1.

Plaintiff handled this case very efficiently. Most of the litigation work was done by the least expensive member of Plaintiff's legal team, including propounding and responding to requests for discovery and preparation of expert reports. Bond Decl. ¶ 1.

**3. The requested number of hours are reasonable.**

The hourly time being requested in this application is well supported by the contemporaneous and detailed time records that clearly "identify the general subject matter of

[the attorney's] time expenditures" being requested. *Hensley v. Eckerhart,* 461 U.S. 424, 436, n.12 (1983). Counsel have attached documentation indicating the identity of the biller, time spent on the activity, any deductions of actual time made in the exercise of billing judgment, specific description of the activity, and hourly rate charge by the biller. Heiden Decl., Ex. B; Declaration of David Fathi ("Fathi Decl."), Ex. B.

**4. The Rates Sought Are Reasonable.**

The rates sought by attorneys in this case are reasonable. Plaintiff's counsel are highly experienced and highly specialized attorney who exclusively practice civil rights litigation, primarily in the federal court. Fathi Decl., Exs. A, C, D.

**a. The requested hourly rate for ACLU of Maine attorneys is within the prevailing market rate for legal work of comparable attorneys.**

ACLU of Maine Attorneys Heiden and Bond are both highly experienced and highly sought after. *See* Heiden Decl., Ex. A; Bond Decl., Ex. A. Attached to this application are the Declarations of two Maine counsel verifying that the current, customary hourly rates of Attorney Heiden ($300) and Attorney Bond ($250) are within the prevailing current market rates for legal work of attorneys with similar skills, experience and reputation. *See* Declaration of Richard L. O'Meara ("O'Meara Decl."); Declaration of Carol J. Garvan ("Garvan Decl."); s*ee also Wilcox*, 921 F.Supp. at 845 n.3, *Maceira v. Pagan*, 698 F.2d 38 (1st Cir. 1983); see also *Maine People's All. v. Holtrachem Mfg. Co., LLC*, 2016 WL 5676887, at *6 (D. Me. Sept. 30, 2016) (approving of a rate of $250 for a reasonably experienced attorney and $300 for a highly experienced attorney). Attorneys Heiden and Bond are highly sought out, in part because they are skilled and

experienced and, presumably, in part because they are able to take on cases that are not otherwise particularly remunerative. They turn away exponentially more prospective clients than they agree to accept, and when they do take on a case (especially a time-intensive one such as this) they devote all necessary resources to winning it. Heiden Decl. ¶ 17.

### b. The requested rates for out-of-state counsel are justified.

NPP Attorneys Fathi and Eber are justified in charging out-of-town rates in this case, because of their high level of specialization, which made success in this case possible. In an unpublished opinion, then-Judge Stephen Breyer explained the underlying justification for compensating highly specialized out-of-state attorneys at their ordinary rates:

> Where it is unreasonable to select a higher priced outside attorney-as, for example, in an ordinary case requiring no specialized abilities not amply reflected among local lawyers-the local rate is the appropriate yardstick. But, if the client needs to go to a different city to find that specialist, he will expect to pay the rate prevailing in that city. . . If the courts (without cause) award fees at less than that rate, they will tend to prevent those in smaller communities from obtaining the experienced legal counsel they may need, contrary to the policy behind awards of attorneys' fees to prevailing parties.

*Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir. 1983). There are no lawyers in Maine, and few in the entire country, with the experience and knowledge of Attorney Fathi and Attorney Eber in litigating cases related to prisoner rights and prisoner health. While Maine is home to many intelligent and capable attorneys, litigation concerning the right to access MAT in the corrections setting is so highly specialized that it required going beyond Maine's borders to achieve success.

NPP is one of the a very few offices in the country that specializes in litigating prisoners' rights cases. Fathi Decl., ¶ 4. Their specialized expertise has been recognized by Federal courts throughout the country, including the First Circuit. *See, e.g., Plyler v. Evatt*, 902 F.2d 273, 278 (4th Cir. 1990); *Palmigiano v. Garrahy*, 707 F.2d 636, 637 (1st Cir. 1983); *Duvall v. O'Malley*, No. CV ELH-94-2541, 2016 WL 3523682, at *9 (D. Md. June 28, 2016); *Dockery v. Fischer*, 253 F. Supp. 3d 832, 856 (S.D. Miss. 2015); *Riker v. Gibbons*, No. 3:08-CV-00115-LRH, 2010 WL 4366012, at *4 (D. Nev. Oct. 28, 2010); *Diaz v. Romer*, 801 F. Supp. 405, 410 (D. Colo. 1992), *aff'd*, 9 F.3d 116 (10th Cir. 1993). Attorney Fathi, the most experienced (and most expensive) of out-of-state counsel, was used the most sparingly. Attorney Eber, because of his deep knowledge and experience in public health and corrections medicine, *see* Fathi Decl. Ex. C, was necessarily more involved, but that involvement directly contributed to the success of the litigation. Rates for Attorney Fathi ($570), Attorney Eber ($480), and Ryan Kendall ($300) are established through the Laffey Index created by the Civil Division of the United States Attorney's Office for the District of Columbia. Fathi Decl. ¶¶ 10-11.

**6.      ACLU of Maine and NPP Have Exercised Billing Judgment.**

Counsel for Plaintiffs have exercised billing judgment in not charging for time spent on administrative matters, despite the necessity of those matters to the case. In addition, attorneys have voluntarily reduced the hours billed for various research and strategy tasks, which took longer for this case than is customary due to its novelty. In all, attorneys wrote off more than 10% of their time. Also, Plaintiff has not sought to recoup costs for administrative expenses, though they are compensable under both §1988 and the ADA. Finally, though Plaintiff is entitled

to recoup fees for expert witnesses at their normal rate under the ADA, *Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002), Plaintiff has only sought reimbursement at the discounted rate that experts actually charged.

**7.     ACLU of Maine and NPP Are Authorized To Receive Attorney's Fees.**

ACLU of Maine and NPP are authorized by their representation agreement with the Plaintiff Zachary Smith to apply for and receive the attorney's fees and litigation expenses relating to their work on the case.

The Representation Agreement entered into by ACLU of Maine and Plaintiff Representation Agreement states, in relevant part:

> If my case is successful, the court may require the defendants to pay attorneys' fees and costs. I agree that any such court award of fees and/or costs shall be paid in full to the ACLU of Maine to be distributed by it in accordance with any separate agreement between the ACLU of Maine and co/counsel, if any.

ACLU of Maine and NPP entered into a separate co-counsel agreement forth the terms by which the two organizations will divide any recovered attorney fees and costs. The agreement states that costs and expenses will be reimbursed to the party that bore those expenses first, and that any remaining fee awards "will be distributed among counsel in proportion to the lodestar amount for each counsel.

## CONCLUSION AND SUMMARY

ACLU of Maine and NPP are entitled to receive payment from the Defendant for the following attorney's fees and litigation expenses, as itemized in Heiden Decl. Ex. B and Fathi Decl. Ex. B:

| | |
|---|---|
| Total Actual Hours Spent | 304.35 hours |
| Total Billable Hours after exercise of billing judgment | 269.6 hours |
|     Billable Hours for Ryan Kendall | 1.9 hours |
|     Billable Hours for David Fathi | 1 hour |
|     Billable Hours for Gabe Eber | 36.4 hours |
|     Billable Hours for Zachary Heiden | 67.4 hours |
|     Billable Hours for Emma Bond | 162.9 hours |
| Attorney Fees Sought | $79,452.15 |
|     Fees Sought for Ryan Kendall | $570.00 |
|     Fees Sought for David Fathi | $465.15 |
|     Fees Sought for Gabe Eber | $17,472.00 |
|     Fees Sought for Zachary Heiden | $20,220.00 |
|     Fees Sought for Emma Bond | $40,725.00 |
| Costs | $400.00 |
| Expert Fees | $1,155.00 |
| Total Amount Sought, Payable to ACLU of Maine | $81,007.15 |

Dated: November 1, 2018.                    Respectfully submitted,

/s/ Zachary L. Heiden
Zachary L. Heiden
/s/ Emma E. Bond
Emma E. Bond
American Civil Liberties Union of Maine Foundation
121 Middle Street, Suite 200
Portland, Maine 04101
(207) 619-6224
*zheiden@aclumaine.org*

Gabriel B. Eber
ACLU National Prison Project
915 15th St. N.W., 7th Floor
Washington, DC 20005
Tel (202) 548-6601
Fax (202) 393-4931
*geber@aclu.org*

Counsel for Plaintiff

# CERTIFICATE OF SERVICE

The undersigned certifies that he has electronically filed this date the foregoing MOTION OF AMERICAN CIVIL LIBERTIES UNION OF MAINE FOUNDATION AND NATIONAL PRISON PROJECT OF THE AMERICAN CIVIL LIBERTIES UNION FOUNDATION FOR AWARD OF ATTORNEY'S FEES AND LITIGATION EXPENSES with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record. This filing is available for viewing and downloading from the ECF system.

Dated: November 1, 2018

/s/ Zachary L. Heiden
Zachary L. Heiden
American Civil Liberties Union of Maine Foundation
121 Middle Street, Suite 200
Portland, ME 04103
(207) 619-6224
*zheiden@aclumaine.org*

Counsel for Plaintiff Zachary Smith